UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LAPOLEAN OWENS,

                    Petitioner,

vs.                                    Case No. 3:16-cv-889-J-39JRK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                    Respondents.

_____

**ORDER**

**I.  INTRODUCTION**

Petitioner Lapolean Owens, challenges a 2013 Duval County
conviction for three counts of burglary of a dwelling.  In his
Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a
Person in State Custody (Petition) (Doc. 1), he raises two claims
of ineffective assistance of trial counsel.  Respondents filed a
Response to Petition for Writ of Habeas Corpus (Response) (Doc. 9)
with Exhibits.[1]  Petitioner filed a Reply to Response to Petition
for Writ of habeas Corpus (Doc. 10).  See Order (Doc. 4).

**II.  CLAIMS OF PETITION**

The two claims are: (1) ineffective assistance of counsel for
failure to object to prosecutorial misconduct, and (2) ineffective

_____

[1] The Court hereinafter refers to the Exhibits as "Ex."  Where
provided, the page numbers referenced in this opinion are the Bates
stamp numbers at the bottom of each page of the exhibit.
Otherwise, the page number on the particular document will be
referenced.  The Court will reference the page numbers assigned by
the electronic docketing system where applicable.

assistance of counsel for failure to impeach adverse witnesses, Officer Dave Kaplitz and Sheraud Washington.

The Court will address these grounds of ineffective assistance of counsel, see Long v. United States, 626 F.3d 1167, 1169 (11th Cir. 2010) ("The district court must resolve all claims for relief raised on collateral review, regardless of whether relief is granted or denied.") (citing Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992) and Rhode v. United States, 583 F.3d 1289, 1291 (11th Cir. 2009)), but no evidentiary proceedings are required in this Court. It is Petitioner's burden to establish the need for a federal evidentiary hearing, and he has not met the burden. Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011), cert. denied, 565 U.S. 1120 (2012). It is important to note that a district court is not required to hold an evidentiary hearing if the record refutes the asserted factual allegations or otherwise precludes habeas relief. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). After a comprehensive review of the record before the Court, the Court finds that the pertinent facts are fully developed in this record. Consequently, this Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), and no further evidentiary proceedings are required in this Court.

## III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017). "AEDPA limits the scope of federal habeas review of state court judgments[.]" Pittman v. Sec'y, Fla. Dep't of Corr., 871 F.3d 1231, 1243 (11th Cir. 2017). As such, AEDPA ensures that federal habeas relief is limited to extreme malfunctions, and not used as a means to attempt to correct state court errors. Ledford, 818 F.3d at 642 (quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

The parameters of review are as follows:

> Thus, under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief on a claim "that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court—not Supreme Court dicta, nor the opinions of this Court." Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th Cir. 2014).
>
> As for the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Terry Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts." Id. at 413, 120 S.Ct. 1495. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Lockyer v. Andrade, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). And "an 'unreasonable application of' [Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, --- U.S. ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (quotation omitted). To overcome this substantial hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). This is "meant to be" a difficult standard to meet. Id. at 102, 131 S.Ct. 770.

Pittman, 871 F.3d at 1243-44.

There is a presumption of correctness of state court's factual findings, unless the presumption is rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard of proof is demanding, requiring that a claim be highly probable.

- 4 -

Bishop v. Warden, GDCP, 726 F.3d 1243, 1258 (11th Cir. 2013), cert. denied, 135 S.Ct. 67 (2014). Also, the trial court's determination will not be superseded if reasonable minds might disagree about the factual finding. Brumfield v. Cain, 135 S.Ct. 2269, 2277 (2015). Also of note, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).[2] Once identified, the Court reviews the state court's decision, "not necessarily its rationale." Pittman, 871 F.3d at 1244 (quoting Parker v. Sec'y for Dep't of Corr., 331 F.3d 764, 785 (11th Cir. 2003) (citation omitted)).

Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law

---

[2] As suggested by the Eleventh Circuit in Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), cert. denied, 138 S.Ct. 925 (2018), in order to avoid any complications if the United States Supreme Court decides to overturn Eleventh Circuit precedent as pronounced in Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." <u>Richter</u>, 562 U.S. at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. <u>Id</u>. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>Marshall</u>, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, it was meant to be difficult. <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error), <u>petition</u> <u>for</u> <u>cert</u>. <u>docketed</u> <u>by</u> (U.S. Mar. 9, 2018) (No. 17-8046). Indeed, in order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

## IV. PROCEDURAL HISTORY

In order to provide context, the Court provides the relevant procedural history of the criminal case. In an amended information, Petitioner was charged with three counts of burglary of a dwelling. Ex. A at 35. Petitioner filed a Notice of Alibi. <u>Id</u>. at 53-54. On March 11-13, 2013, the trial court conducted a jury trial. Ex. C; Ex. D; Ex. E. The jury returned a verdict of guilty as charged. Ex. A at 111-15; Ex. E at 596. Petitioner moved for a new trial, Ex. A at 161, and the trial court denied it. <u>Id</u>. at 162.

On April 11-12, 2013, the trial court held a sentencing proceeding. Ex. B at 281-382. The court sentenced Petitioner to concurrent twelve-year prison terms for the three offenses. <u>Id</u>. at 380-82. The court entered judgment and sentence on March 13, 2013. Ex. A at 177-82. Petitioner appealed his conviction. <u>Id</u>. at 193. Through counsel, Petitioner filed an appeal brief. Ex. J. The state filed an answer brief. Ex. K. Petitioner replied. Ex. L. On July 17, 2014, the First District Court of Appeal (1st DCA) per curiam affirmed. Ex. M. The mandate issued on August 25, 2014. <u>Id</u>.

Petitioner filed a Motion for Post Conviction Relief Pursuant [to] Fla. R. Crim. P. 3.850 (Rule 3.850 motion), pursuant to the mailbox rule, on March 31, 2015. Ex. N at 1-34. The trial court

- 7 -

ordered the state to file a response. Id. at 35-37. The state filed a Response to Defendant's Motion for Post-Conviction Relief. Id. at 60-149. Petitioner replied. Id. at 150-56.

The trial court denied the Rule 3.850 motion in its Order Denying Defendant's Motion for Post Conviction Relief. Id. at 157-227. Petitioner filed a Notice of Appeal. Id. at 228. He filed an Initial Brief. Ex. O. The state filed a notice that it would not file a brief. Ex. P. The 1st DCA, on April 22, 2016, per curiam affirmed. Ex. Q. The mandate issued on June 17, 2016. Id. Petitioner moved for rehearing. Ex. R. The 1st DCA, on June 2, 2016, denied rehearing. Ex. S.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In this habeas petition, Petitioner raises two claims of ineffective assistance of trial counsel, and in order to prevail on these Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Recently, the Eleventh Circuit, in Reaves v. Sec'y, Fla. Dep't of Corr., 872 F.3d 1137, 1148 (11th Cir. 2017) (quoting Strickland, 466 U.S. at 687), instructed:  a counsel's performance is deficient only if counsel's errors are "so serious that counsel was not functioning as the

- 8 -

'counsel' guaranteed the defendant by the Sixth Amendment." And importantly, with regard to the establishment of prejudice requirement, the Eleventh Circuit provided that the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome. Id. (quoting Strickland, 466 U.S. at 694).

In order to prevail on a claim of ineffective assistance of counsel, both parts of the Strickland test must be satisfied. Bester v. Warden, Att'y Gen. of the State of Ala., 836 F.3d 1331, 1337 (11th Cir. 2016) (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)), cert. denied, 137 S.Ct. 819 (2017). However, a court need only address one prong, and if it is found unsatisfied, the court need not address the other prong. Id.

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In ground one, Petitioner raises a claim of ineffective assistance of counsel for failure to object to prosecutorial misconduct. Petition at 5. Petitioner exhausted this ground by raising it in ground one of his Rule 3.850 motion and appealing the denial of this claim.

It is important to note that on direct appeal, Petitioner, through counsel, claimed "[t]he cumulative nature of improper comments in the state's closing argument rose to the level of fundamental error and deprived the defendant of a fair trial." Ex. J at i. The 1st DCA affirmed per curiam. M.

In the Petition, Petitioner focuses on what he claims were significant, improper comments that counsel failed to object to during closing arguments. The first alleged improper comment concerns an accusation that Ms. Ashley Kendrick-Owens fabricated her testimony to help her husband, the Petitioner. Petition at 6. The second comment at issue is a statement by the prosecutor: "You know who doesn't have an interest in the outcome? The three detectives. They have no interest in the outcome of the case." Id. Petitioner complains that this comment improperly bolstered the credibility of the detectives. Id. Finally, the third comments at issue concern a description of Lapolean Owens and the assertion he was in the driver's seat of the car. Id.

In addition to these alleged improper comments made at trial, Petitioner complains that his counsel failed to object to the prosecutor making improper comments at sentencing about "thoughts" that the victims and their family members shared with her. Id. Petitioner asserts these shared "thoughts" served to inflame the passion of the sentencing judge and resulted in a harsher sentence.

Notably, the trial court, in denying the Rule 3.850 motion, referenced the applicable two-pronged <u>Strickland</u> standard as a preface to addressing Petitioner's claims of ineffective assistance of counsel. Ex. N at 157-58. The court explained its basis for denying the claim of counsel's failure to object to improper prosecutorial comments:

Attorneys are given wide latitude during closing argument "to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." <u>Bertolotti v. State</u>, 476 So.2d 130, 134 (Fla. 1985). "An attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." <u>Miller v. State</u>, 926 So.2d 1243, 1254-55 (Fla. 2006).

Ex. N at 158.

The trial court also addressed the negative impact of improper bolstering: "[i]mproper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony." <u>Id</u>. (quoting <u>Hutchinson v. State</u>, 882 So.2d 943, 954 (Fla. 2004) (abrogated on other grounds)).

After reviewing the allegedly improper comments, the trial court held:

The record supports that the arguments were either made in rebuttal to defense argument, were a fair reference to the evidence on defense argument or were objected to by defense counsel.

Ex. N at 158. With regard to the allegedly improper comments made at sentencing, the court found that the prosecutor properly presented and argued aggravation and mitigation, including victim impact. <u>Id</u>. at 159.

In denying this ground, the trial court determined that counsel could not be deemed deficient for failing to object to prosecutorial arguments and comments that were proper. <u>Id</u>.

Finally, the trial court held Petitioner failed to satisfy either the performance or prejudice prong of <u>Strickland</u>.  <u>Id</u>.

In reviewing a claim of prosecutorial misconduct, it is important to remember that a prosecutor should not make "[i]mproper suggestions, insinuations, or assertions" that are intended to mislead the jury or appeal to passions or prejudices during closing arguments; <u>United States v. Hope</u>, 608 F. App'x 831, 840 (11th Cir. 2015) (per curiam), but a prosecutor is entitled to offer the jury his or her view of the evidence presented.  With regard to the comments made at trial, that is exactly what the prosecutor did; she argued the testimony showed the occurrence of specific events, prompting certain conclusions.  Finally, in closing, she asked the jury to draw all logical inferences from the evidence presented at trial.

Particular comments are at issue.  Some background information is required to address the disputed comments.  In closing argument, defense counsel argued that Mr. Washington, the co-defendant, had "a tremendous interest in how this case should be decided." Ex. E at 548.  To counter this contention, the state, in rebuttal closing, made the following argument:

> [T]hey talked about an interest in the case and who has an interest in this case. Now I want to talk a little bit about Ashley Owens.  She has an absolute interest in this case.  The defendant is her husband, the father of her child.  She told you she does not want him to go to prison.  She has every reason in the world to get on that stand and

try to tell you, he didn't do it; he was with
        me.

Id. at 563-64.  The prosecutor descried how pre-trial, Ms. Owens
provided a different time-frame for being with Petitioner on the
day of one of the burglaries.  Id. at 564.  The prosecutor
emphasized the fact that Ms. Owens expanded the time-period in her
testimony at trial.

        Upon review, this was certainly a fair comment on the
testimony provided at trial.  Ms. Owens testified on direct that
she picked Petitioner up between 11:00 and 12:00 on January 27,
2011.  Ex. E at 478, 483.  On cross examination, the prosecutor
asked Ms. Owens about her previous deposition testimony, in which
she stated she picked Petitioner up on that date between 12:45 and
1:00, failing to cover the critical time period of the crime.  Id.
at 488.  Ms. Owens finally said the time period stretched between
11:00 and 1:00.  Id.  There was nothing improper about the
prosecutor's comments regarding Ms. Owens' changed testimony.
Defense counsel did not perform ineffectively by electing not to
object.

        Petitioner also claims his counsel's performance was deficient
because he should have objected when the prosecutor said in
rebuttal closing:

                But you know who doesn't have an interest
            in the outcome?  The three detectives.  They
            have no interest in the outcome of this case.

Id. at 564.

In conjunction with the above comments, the prosecutor argued that the detectives demonstrated their impartiality by not over-charging the defendant with crimes; the detectives only brought charges concerning the burglaries to which Petitioner confessed, not the ones the detectives may have suspected he had done. Id. at 565. Again, this was a fair comment on the evidence. Detective Thompson testified that Petitioner pointed out the houses he burglarized, and that when Detective Thompson asked Petitioner about another home on Westport Bay Drive, Petitioner denied burglarizing it. Id. at 430. The detective decided to charge Petitioner with only three burglaries of the houses specifically pointed out by Petitioner. Id. at 431.

Concerning additional comments made by the prosecutor, Petitioner complains defense counsel failed to object to several statements about Petitioner's identity or a description of his person. In particular, Petitioner claims the prosecutor made a "false statement" in closing argument when she said "[t]here was a description of Lapolean Owens." Ex. E at 565. Petitioner also claims counsel was ineffective for failing to object to the following portion of closing argument:

> Just the other day, you heard from Ganell Ingram, who is a U.S. Postal Service worker who works in that area. She observed the blue Dodge Magnum that is the defendant's car backed into the driveway of that house. She observed two black males, who matched the description of Mr. Washington and that defendant, carrying stuff out. Now, Mr.

Washington was observed carrying a TV.  **Mr. Owens was in the driver's seat of that car.**

Id. at 517.  The prosecutor went on to say Ms. Ingram provided "a description of this defendant[.]"  Id. at 517-18.

The Court is not convinced that the prosecutor made a "false statement" in closing or that counsel performed deficiently by failing to object.  There was a wealth of evidence at trial, including testimony of the co-defendant, supporting the prosecutor's closing remarks concerning Petitioner being the driver of the vehicle and matching the description of the driver provided to the police officers and released in a BOLO.

With respect to the description of Petitioner at trial, the record shows the following.  Ms. Ingram testified that the person driving the blue Magnum car looked slender, a little bit taller than the man carrying the television, had a darker complexion, and was wearing a do-rag on his head.  Ex. D at 256.  She described the person carrying the television as a not very large person, a little bit stocky, clean-cut, African-American, with a short hairstyle and a clean-shaven face.  Id. at 255.

Officer Dave Kaplitz said the BOLO issued stated there were two black males, one with dreads, and the other person being a short black male with short hair.  Id. at 307.  Detective D. Groves testified that when he called Ms. Ingram, she described two individuals: a black male sitting in the car seat, with long dreads, and a black male carrying a TV.  Id. at 319.  After

- 15 -

obtaining this information, Detective Groves put out the radio
BOLO,[3] regarding two black males, one really short with short hair,
and the other with long dreads sitting in the car, blue Dodge
Magnum.  Id. at 320.  Detective Groves explained that he did not
put the description of the driver in his report, but he did put it
in the BOLO and on the MDC.  Id. at 321.

Responding to the question why he remembered the description
of Petitioner's hair, Detective Groves explained that when asked
about the height of the driver, Ms. Ingram responded that she could
not see his height, but she did see the driver had long dreadlocks.
Id. at 344.  Detective Groves said the BOLO, "both the typed one
that I sent out on the computer plus the one I put on the air,"
provided the description of Petitioner with dreadlocks.  Id. at
355.  Officer Dave Kaplitz testified that, after receiving the
BOLO, he pulled Petitioner over driving a blue Dodge Magnum, and
Petitioner's appearance seemed to match that contained in the BOLO.
Ex. D at 309.

The comments about which Petitioner complains did not amount
to improper suggestions, insinuations, or assertions.  The Court
finds Petitioner's contention that these comments mislead the jury
in some way unavailing.  Petitioner's counsel cannot be deemed
ineffective for failing to object to the prosecutor's closing
remarks.  The remarks were supported by the evidence at trial.

---

[3]  The term BOLO is an acronym for "be on the look out."

Attorneys are allowed wide latitude during closing argument as they review the evidence and explicate inferences which may reasonably be drawn from it.

There is no reasonable probability that the outcome of the proceedings would have been different had counsel objected to all of the comments Petitioner's references under ground one. Even if defense counsel had objected, the trial court would not have sustained the objections to the prosecutor's comments as they were extrapolated from the evidence presented at trial.

In order to establish a substantial error by counsel for failure to object to prosecutorial misconduct, the prosecutor's "comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than it would have otherwise." Walls v. State, 926 So.2d 1156, 1167 (Fla. 2006) (per curiam) (citation omitted). Also, there must be a showing that there was no tactical reason for failure to object. Id. Without a showing of the above, a petitioner fails to demonstrate the requisite prejudice. Id.

In this case, the comments of the prosecutor did not deprive Petitioner of a fair and impartial trial. Also, they were not so inflammatory as to result in a more severe verdict than was demonstrated by the state's evidence. After reviewing the record, it is clear there was substantial and very strong testimonial and

physical evidence presented at trial against Petitioner. Under these circumstances, any failure on defense counsel's part to object to the state's closing argument did not contribute significantly to the verdict.

Upon review, the prosecutor properly undertook an overall review of the evidence and explicated those inferences which may be drawn from it, including that of the description of Petitioner as the driver. As such, defense counsel's failure to object during closing argument did not amount to deficient performance and Petitioner has failed to satisfy the prejudice prong as there is no reasonable probability that had defense counsel objected to the statements of the prosecutor in closing, the outcome of the trial would have been different.

Also in ground one, Petitioner contends that the prosecutor intended to appeal to the court's passions during sentencing, and defense counsel should have objected to the prosecutor comments about "thoughts" that the victims and their family members shared with her. Of note, the victims and their family members did not testify at sentencing. The trial court found that the statements provided by the prosecutor were in rebuttal to the mitigation and properly conveyed the impact of the crimes on the victims' and their families. Ex. N at 159.

Instead of attacking the prosecutor's claim of victimization, defense counsel chose another tactic. He elected not to object to the remarks or to dispute the allegations of victimization, but

instead he focused his closing argument on all of the people who came forward in support of Petitioner at sentencing. Ex. B at 364-66. The court expressed its appreciation for the conduct of counsel, recognizing he zealously and aggressively represented his client, while ethically and professionally conducting himself before the court. Id. at 370. The court said it was a rare event to have a courtroom full of witnesses speaking on behalf of a defendant. Id. at 371. After argument, the court decided this was the unusual case requiring further reflection after the substantial evidence presented at sentencing. Although the court had been prepared to sentence the Petitioner that day, after hearing the testimony and argument, the judge decided to take considerably more time for reflection, continuing the proceeding until the following day. Id. at 373-74.

Upon review of the sentencing record, the prosecutor asked for a sentence of thirty years. Id. at 364. Petitioner faced a maximum sentence of forty-five years, with the possibility of consecutive sentences based on the three burglaries. Id. After considerable reflection, the Court sentenced Petitioner to three, concurrent twelve-year prison sentences, less than half of the time requested by the state. Id. at 380-82. Based on the seriousness and number of crimes, the court's sentence reflects the impact of strong mitigation testimony and persuasive argument on the court's decision-making.

This Court is charged with recognizing that, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689-90 (citation omitted). Here, defense counsel elected to forego challenging the statements of the prosecutor at sentencing concerning victimization, a relatively sensitive subject given the nature (burglaries of dwellings) and number (three) of felonies committed; instead, defense counsel presented and relied upon a wealth of mitigation evidence from numerous witnesses, a sound and effective strategy as evidenced by the trial court's pronouncement of relatively light and concurrent sentences. Again, the state was seeking a thirty-year sentence and Petitioner was facing a maximum of forty-five years and the possibility of consecutive sentences.

"Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel[.] Id. at 690. This Court will not unduly scrutinize the performance of defense counsel, and finds this was acceptable and reasonable assistance considering the circumstances. In order to show a violation of the Sixth Amendment, both parts of the Strickland test must be satisfied. Even assuming deficient performance, Petitioner has not shown resulting prejudice. The trial court could have reasonably concluded that Petitioner failed to establish that the outcome of the sentencing hearing would have been different had counsel

objected to the comments. Of import, Petitioner has not shown that a reasonable probability exists that the outcome of the sentencing proceeding would have been different if his counsel had objected to the prosecutor's comments.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. Thus, deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Ex. Q. Given due consideration, its decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground one is due to be denied.

### B. Ground Two

In ground two, Petitioner raises a claim of ineffective assistance of counsel for failure to impeach two adverse witnesses: Officer Dave Kaplitz and Sheraud Washington. Petition at 8. Petitioner exhausted this ground in the state court system in ground two of his Rule 3.850 motion. After citing the <u>Strickland</u> two-pronged standard of review to prevail on a claim of ineffective assistance of counsel, the trial court rejected this ground. Ex. N at 157-159. The court stated: "[a] review of the testimony pointed to by the defendant shows that counsel did not fail to

impeach the witnesses, and therefore cannot be ineffective." <u>Id</u>. at 159.

"Strickland does not guarantee perfect representation, only a 'reasonably competent attorney.'" <u>Richter</u>, 562 U.S. at 110 (quoting <u>Strickland</u>, 466 U.S. at 687) (internal quotation omitted). Here, defense counsel's representation did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial. On the contrary, Petitioner received effective representation.

Petitioner suggests that Ms. Ganell Ingram's testimony could have been used to impeach Officer Kaplitz's testimony that he pulled Petitioner over based on the description given by the witness. Petition at 8. In this regard, Petitioner claims he did not match the description of the participant in the burglary. <u>Id</u>.

At trial, on direct, Officer Kaplitz testified he came into contact with Petitioner during a traffic stop after receiving a BOLO for several burglaries in the area, and the BOLO described a certain vehicle and its occupants. Ex. D at 307. The BOLO included a description of a blue Dodge Magnum with lots of chrome, especially around the windows. <u>Id</u>. The BOLO also stated the vehicle may be occupied by two black males, one with dreads, and one a shorter black male with short hair. <u>Id</u>. Officer Kaplitz attested he observed such a vehicle on January 28, 2011. <u>Id</u>. at 308. The Officer said the individuals' appearance seemed to match that of the subjects of the BOLO. <u>Id</u>. at 309.

Defense counsel, through cross examination, focused on the fact Petitioner did not attempt to flee from the police. Id. at 310-11. Officer Kaplitz stated there was no improper or erratic driving. Id. at 311. He testified Petitioner promptly stopped the car at Forrest High School and there was no attempt to elude. Id. at 311-12. Defense counsel also inquired as to whether there were any furtive movements in the car or any attempts to throw anything out of the window. Id. at 313. Officer Kaplitz said he did not observe any. Id. Defense counsel also asked if the occupants of the vehicle were cooperative, and Officer Kaplitz responded affirmatively. Id. at 314.

Ganell Ingram testified the car she saw was navy, with tinted windows and nice chrome wheels. Id. at 255. She described the driver as a darker complected African American male, a little bit taller than the other perpetrator, with a do-rag on his head. Id. at 256. Ms. Ingram said she could not tell the type of hair of the driver. Id.

Sheraud Washington, the co-defendant, testified on direct that Petitioner committed the three burglaries. Id. at 362. Mr. Washington testified he was living with Petitioner at the time of the burglaries and they were teammates. Id. at 363. Mr. Washington described Petitioner as the driver of the vehicle, the blue Dodge Magnum. Id. at 365, 378, 381. Mr. Washington told the police Petitioner participated in the burglaries. Id. at 383-84. Mr. Washington identified a photograph of Petitioner and stated

that was how he looked on the days of the three burglaries.  <u>Id</u>. at 387.

Jason M. Gropper, defense counsel, cross examined Mr. Washington.  <u>Id</u>. at 390.  He effectively attacked Mr. Washington's assertion that he just wanted to be honest, and pointed out that he failed to contact the police about the burglaries.  <u>Id</u>. at 390-91.  Mr. Gropper challenged the witness, asking him if he was immediately honest with the police when he was pulled over.  <u>Id</u>. at 392.  Mr. Gropper also inquired about Mr. Washington's failure to admit to more than one burglary.  <u>Id</u>. at 393.

In addition, Mr. Gropper effectively impeached Mr. Washington concerning his plea deal.  <u>Id</u>. at 394.  On cross, Mr. Washington admitted that the outcome of Petitioner's case could affect Mr. Washington's case.  <u>Id</u>.  Mr. Gropper impeached Mr. Washington's testimony with his prior statement.  <u>Id</u>. at 397.  Mr. Washington admitted that the agreement said the sentence would run concurrently.  <u>Id</u>. at 397-98.  Importantly, Mr. Gropper asked pointed questions, and Mr. Washington admitted that, on occasion, he had driven the blue Dodge Magnum and was able to borrow the car and drive it, contrary to his testimony on direct.  <u>Id</u>. at 398-99.

Mr. Gropper impeached Mr. Washington's testimony with his previous sworn statement.  Ex. E at 409-10.  Mr. Washington admitted that when they were pulled over, he did not tell the police about Mr. Owens' involvement.  <u>Id</u>. at 410.  Mr. Washington admitted that he did not mention Mr. Owens' involvement until much

later, after they were both questioned at the Police Memorial Building.  Id. at 413.

Petitioner asserts that counsel failed to adequately examine Mr. Washington about what kind of benefit he would receive for testifying at Petitioner's trial.  Petition at 8.  Based on a review of the record, this contention has no merit.  The record reflects that defense counsel effectively examined Mr. Washington about the benefits he was receiving or expecting to receive from the state by testifying against Petitioner.  This examination was very effective, particularly after Mr. Washington denied any benefit on direct, when he was clearly receiving some benefit and expecting a beneficial sentence.

Petitioner also contends his attorney failed to adequately impeach Mr. Washington about being able to drive the car.  Again, the record shows defense counsel adequately impeached Mr. Washington's testimony.  On direct Mr. Washington denied that he was allowed to drive the car by himself.  On cross, he admitted that he was allowed to borrow and drive the car.

After due consideration, the Court finds Petitioner's contention of inadequate impeachment of adverse witnesses is non-meritorious.  Defense counsel performed effectively, if not perfectly; "there is no expectation that competent counsel will be a flawless strategist or tactician[.]"  Richter, 562 U.S. at 110.  Under Strickland, perfection is not the standard.  Petitioner has the burden to show that his counsel's representation fell below an

objective standard of reasonableness. Petitioner has failed to meet this burden. He has not shown that his attorney's representation was so filled with such serious errors that defense counsel was not functioning as counsel guaranteed by the Sixth Amendment, admittedly a high bar that is difficult to reach. <u>Id</u>. at 104 (citation omitted).

In denying ground two of the Rule 3.850 motion, the court concluded that counsel's performance was not deficient under <u>Strickland</u>. The 1st DCA affirmed. Ex. Q. Its adjudication on the merits is unaccompanied by an explanation. Thus, the Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Now it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. If he fails to accomplish this task, he cannot prevail on ground two.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. In this instance, deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Ex. Q. Given due consideration, its decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable

determination of the facts.  As such, ground two is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.  The **Clerk** shall enter judgment accordingly and close this case.

3.  If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[4]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

---

[4] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of March, 2018.

_____
BRIAN J. DAVIS
United States District Judge


sa 3/26
c:
Lapolean Owens
Counsel of Record